The first matter for argument for this afternoon is Steveson et al. v. Carroll, and I would call upon Mr. DeGiulis. Good afternoon. May it please the Court, my name is Leon DeGiulis, and I represent the Bronx. May I please reserve three minutes for rebuttal? This case is about the standard to apply to 1983 actions when they're brought by a pro se and trial detainee under Rule 12b-6. In this case, the plaintiffs have alleged two separate claims. They've alleged a substantive due process claim that they are being punished by the warden, and they allege a procedural due process claim that the restrictions that they've been placed under, they've had no procedure, no opportunity to be heard, no opportunity of notice, no procedure at all. The parties agree that the plaintiffs have the status of pretrial detainees here, am I correct? Correct. Correct, Your Honor, and that's crucial in this case because, as the Court knows, pretrial detainees have a constitution that protects liberty interests that sentenced inmates do not. Now, in this case, the trial court applied the standard under SADM, which is... Well, and again, to abbreviate, both sides agree the district court got it wrong in the application of SADM, did they not? Absolutely correct. The warden has said that it doesn't matter because the principles underlying SADM would also apply here, but this Court in Fuentes did say that SADM doesn't apply and the district court applied the wrong standard. You can't have it both ways. You can't have procedural and substantive due process violation, can you? Absolutely, Your Honor, and I'll tell you how. There are two separate claims. The substantive due process claim here is punishment, and what the plaintiffs are alleging is that they are being punished by being placed inside, or in this very restrictive environment. Now, they're in their cell for 165 of 168 hours a week. They get three hours a week to shower and for recreation, which consists of walking around a steel cage. Well, but again, from a legal standpoint, neither side disputes, as I understand the condition of the record, that the conditions applicable to these plaintiffs as residents of an RHU or an SHU, different prisons call it different terms, are more strict and more restrictive than that which would obtain for the general population. So that's really not an issue here, is it?  My understanding of Delaware's position is these guys are charged with capital murder, charged with it. We have the inherent authority to place them in a different level of confinement by virtue of the nature of the charge. Your Honor, it depends on what the motives and intent of the warden is. The same conditions may have different effects depending on why they're being imposed on someone. There's no doubt that there are legitimate security interests at hand, and there's no doubt that in the vast majority of cases, these conditions would be okay. Well, is a rule that pretrial detainees charged with capital murder should be placed in an RHU because of the nature of the offense with which they are charged, reasonable as a general principle? As a general principle, it is probably not unreasonable. It would depend on the particular facts and circumstances of the case. The problem with this case, Your Honor, is the security interests have alleged, exactly as you've said, that these people are being charged with capital murder. In practice, however, not all people charged with capital murder are placed in SHU. Well, in fact, that leads to what was going to be my hypothetical. Let's assume that the RHU has 10 spaces, spaces for 10 prisoners. Is this Gander Hill? I forget which particular government prison is implicated here. But you've got 10 openings, and you've got 13 people charged with capital homicide. Somebody has to make an administrative decision. Right, Your Honor. And the basis of the administrative decision is a fact question that must be determined on a full record. This is a 12 v. 6 motion. And the problem that we have here is it's not that there were 13 spots and that there were 13 capital murder defendants and there are 10 open spots. We had one of the defendants who was at an entirely different facility after a prison disturbance. Mr. Jones. Mr. Jones was moved to this facility, which indicates, likely indicates, at least strongly suggests that there's some sort of disciplinary action that's going on here. And as the court held Fuentes, when there's a disciplinary action, that is a constitutional protected liberty interest upon which due process is required. Do you maintain that before a pretrial detainee can be put in this SHU unit, that he has to be given a hearing before some sort of an officer? That's a procedural due process issue. Is that what you're maintaining here? The substantive due process is that they're improperly being punished. That he's being punished. But you're saying procedural due process, and that's what it is, is it not? Or am I missing it? Well, there are two separate claims again. Let me finish this up. There's the substantive due process, which is the actual punishment. But that's settled. I mean, there's no question. Is there under Supreme Court jurisprudence that there's no, that the state cannot punish a pretrial detainee? Absolutely not. Through conditions of contempt. Absolutely. So that's not before us. Well, it is before us because there's a question of fact. The warden has said we're not punishing him because this is, we put him there for security purposes. But the legal issue is. Absolutely. Now, the procedural due process, there are three reasons that, as far as I can tell, that the person, that these appellants would have ended up in restrictive confinement. One is that they're being punished as they've alleged. Two is it's a disciplinary action that they're being disciplined for something they've done in prison as opposed to their underlying crime. Or three, it's a legitimate penological interest that's reasonably related to why they're there. Now, under the first two questions, those absolutely would require a procedure. They would require notice and an opportunity to be heard. That's a fact question. Not prior, not prior to the prisoner being placed in the SHU. Depending on the circumstances, Your Honor. If it, obviously, if it's an emergency situation, they can segregate the prisoner and they can hold a hearing afterwards. I mean, you apply a balancing test of sorts in the Mather versus Elbridge to determine what kind of procedures are appropriate under the circumstances. So under the first two prongs of punishment or disciplinary, which right now we're at the 12B6 and trying to figure out exactly why this person's here. Well, two of them we know didn't have any problems with that, right? I mean, they were not being punished or disciplined except for Jones. Well, Jones, it looks like that's what happened to him. And also, Mr. Manley was in the SHU and he was transferred out for a certain time and then he was transferred back in. And the bottom line is we don't know why these transfers were being taken. And if they were being taken for disciplinary action, they are entitled to notice and a hearing. That's what the court has held in Fuentes. Wait, but what would separate that? I thought I understood your argument, but now I'm not sure I do. You're suggesting that they may have been subject to punitive steps because of something, that is, Manley might have been because of something he did within the prison confines? There are three separate issues, three separate categories of pretrial detainees. One is punishment. And the courts, the problem has been is the courts have used terms interchangeably. Punishment as I'm referring to, it means punishment for the underlying crime, having nothing to do with anything that goes on in prison. And that is per se unconstitutional, the court held in Bell. That's a substantive due process claim. The second one is disciplinary. And that's if they've done something inside the prison, they've attacked a guard, they've tried to escape. And they can be punished for that, provided that there are certain procedural requirements met. And that's what it looks like, at least with Mr. Jones. He's being disciplined, perhaps with Mr. Manley. We just don't know the facts. And the third category is the reasonably related penological interests. And in the typical situation, procedure may not be required. However, in this circumstance, I would argue that even if we got past the fact issues and we determined that there was a legitimate penological interest, I think that there would be procedures required here. And I think we can look to the court's opinion in Schoetz versus Horn. I would like to ask what you thought Schoetz demonstrates for us here, because it seems to me that if we were prepared to find a protected liberty interest in being released from restrictive confinement in Schoetz, a fortiori there is a protected liberty interest in being released as a pretrial detainee from some kind of restricted housing facility for you. Absolutely correct, Your Honor. I mean, there's a difference of degree. If someone's placed as administrative matter in the SHU for two weeks because there's not enough space in the general population, they need to make room for him, and it's later determined that's the reason he was placed in there, I don't think that you would need notice in a hearing to go through large procedural facts. But in this case, these people, two of them were in restrictive custody, SHU, for almost five years with no hearing, no evidence against inmates in Schoetz, and they were in there for almost as long a time. Schoetz was getting some kind of monthly review, I believe. Absolutely, every 30 days I sat down and they reviewed his status, they gave an opportunity to let the court or let the individual who was reviewing his status know of any facts that happened. Here we have no procedure at all. Can we reach the qualified immunity issue on this appeal at this time? I don't think you can, Your Honor, because for one, under Saucier v. Katz, the court is supposed to first determine the nature of the constitutional claim. Otherwise, nothing would become clearly established. If the district court adjudicates that you're correct, that your 14th Amendment has been violated, you would say at that time the district court should adjudicate that question? Absolutely, because until you determine the exact nature of what was going on here, we don't know whether qualified immunity could apply. If the court, if the, I believe, files an affidavit that shows that for regulatory purposes they determined to put him in Duke SHU, of course that would have to be done on summary for qualified immunity. It would depend on the nature of the facts as they came out, Your Honor. For example, if it were determined that he were, in fact, attempting to punish the inmates here, that wouldn't qualify as an affidavit. Of course, that's well adjudicated and anyone should know that. But if they, if it comes at, an affidavit comes at, for regulatory purposes, they deemed these men to be dangerous for whatever purpose, and they put them in SHU for that purpose, would they be entitled to qualified immunity if that were the factual scenario? It would be hard to say. I mean, Fuente is clearly established. I think between Fuente and Shoves v. Warren. No, there's no, certainly jurisprudence from this court clearly resolves those questions. I think when you looked at Fuente and Shoves v. Warren, it would indicate that the answer is that they would have to have some procedural protection. And the question is, if they were given a minimal amount of procedural protection, whether that would have been good enough. If the initial determination that this was a security purpose, and maybe some periodic ad hoc review afterwards, maybe that would be good enough. Well, your position is that if this SHU confinement was improper, that the prison should have, even before they put them there, given them some procedural due process, even post hoc. Is that your position? While they were in confinement, they ought to have had some sort of review of their status. While but not before? Well, if it was an emergency, they could do it immediately. Again, it would depend on the factual scenario. I don't know how they ended up being placed in an SHU. Let's assume that there's a reasonable policy, or as you've put it, certainly correctly, a not unreasonable policy, of placing an RHU accused on a pretrial detention basis, charged with capital homicide. And that is a policy that is promulgated in advance of the pretrial detention of any of these theoretical parties. Why should there be a need for any form of process in advance of their reference to this RHU? Under that scenario, I don't know that there necessarily would have to be, Your Honor. But that's not the fact of the case. There's nothing published here to that regulatory publication. But my question to you is, if there is nothing published, and the record doesn't seem to indicate there is anything that they put these people in SHUs, and as a regulatory matter, the jail decided that two out of three, or not all burglars, but these particular burglars or suspects, were put in SHU, and they did it for regulatory purposes, not for punishment, the affidavit says to some effect, why would that be entitled to, why should we, well, of course it's not before us, this is for the district court, why can't the district court at that point say that this was not well-known, well-established, and certainly qualified immunity is appropriate? That's not the case here. It's hard to determine the exact facts as they will come out in this case. I'm hesitant, because procedural due process is so much of a weighing process, without knowing everything that's going on, I really just can't answer that question. Any further questions? Thank you, we'll have to move on. Thank you, Your Honor. Good afternoon. May it please the Court, Deputy Attorney General Richard Hubbard, appearing on behalf of the appellee, defendant below, Warden Thomas Carroll. The main issue as we see the case is whether, on a motion to dismiss, the claims are entitled to denial and subsequent discovery when they fail to allege any violation or improper conduct by defendant Carroll in their complaint. Put differently, does a single conclusory boilerplate assertion state a claim where the rest of the complaint fails to raise an inference of improper conduct or violation by the defendant? Did they claim that they were being punished under these circumstances? They used the term punitive, punitive transfer to characterize the transfer, and that is the only allegation of punishment in the complaint. Why is that sufficient? You acknowledge you can't punish a pretrial detainee, don't you? If that detainee has not engaged in any prison impropriety. I think under traditional, the traditional rule in the Third Circuit, that a single boilerplate conclusory allegation with no support in the rest of the complaint is insufficient. Well, this is notice pleading, though. They claim that they're being punished and they're pretrial detainees. Why isn't that sufficient? They're not allowed to be punished. I acknowledge that they're not allowed to be punished. They also could have just handed in a complaint that had two words or three words, 14th Amendment violation. Do you know of any punitive action semantically that does not constitute punishment by definition? No, punitive and punishment are the same. I agree with that. But what It's absolutely conclusory. And if one looks at the supporting documents that they filed for their motion for a TRO, preliminary injunction, and it's at Joint Appendix 37, they explain what they mean by punishment. And they state, quote, the amount of time plaintiffs have been in isolation, coupled with the differences in rules and privileges between population constitutes punishment. And that is their theory. And we submit that that is insufficient to state a claim. And the plaintiffs point to Magluta v. Samples, in which in Magluta the court did say that the allegation of punishment was sufficient. And it would assume at that that it was punishment because the plaintiff had made allegations with sufficient specificity. And the specific allegations by Magluta were that he had filed a petition for habeas corpus relief. He was thrown into isolation as retaliation without having broken any rules or causing any disturbance. This clearly stated a claim. We have something quite different here. We do not have specific allegations of improper conduct or any expression of intent to punish. Well, you say there's no allegation of improper conduct. He's a pretrial detainee and he alleges he's being punished. What more do you need? Why does he allege that he's being punished? That's his theory is. That goes through discovery. I mean, the complaint is a short, sweet statement of facts. But it wasn't short and it wasn't sweet. The fact is that he went on and on talking about it's uncomfortable being in maximum security. That was the gist of the complaint. We don't have all the privileges that they have in general population. And we don't think that the one word, punitive, transforms a complaint that is otherwise insufficient into a sufficient complaint. This court in Ivanko v. Fisher in 2005 said that a single word like that, that's conclusory and boilerplate, is insufficient to save an otherwise deficient complaint. He alleges that he was in SSHU, right? Yes. He also alleges that other inmates charged with murder are not in SHU. That's correct. Doesn't he allege that he was placed in the isolation tier? He alleges that, but SHU is by its nature a segregation. Well, isn't that a factual allegation? It certainly separates his case from that of a member of the general population? It is. But if we return to Bell v. Woolfish and Block v. Rutherford analysis, the question is, is there a reasonable relationship between the restriction and the legitimate government purpose? And when the complaint's... Well, that gets us beyond the inquiry into whether these are sufficient allegations under I don't agree. I think if, on the face of the complaint, it fails to state a due process violation under the test of Bell v. Woolfish and Block v. Rutherford, the complaint should be dismissed. How factual does he have to get in a complaint to set forth a cause of action? I don't think he has to get particularly factual at all, but I don't think a single word. And he says, since plaintiffs have been in isolation, approximately 32 months to date. Correct. Now, this is an allegation, again, contextually, that is with reference to the procedural due process allegations here, which includes an allegation that no explanation was given for the, quote, punitive move. But I, well, speaking for myself only, I have considerable doubt about your adequacy of allegations here, but while you're gone... Why did you file an affidavit and move to summary judgment saying the reason why you put him in SHU? What would be so onerous to require you to do that? We did. We did put in an affidavit, and we did state that the reason that he is in SHU is because they're charged with murder. But the court never converted this to a Rule 56 proceeding? Apparently not. Well, in other words, the accountant never got an opportunity to gainsay the... Oh, yes, he did, Your Honor. We filed a motion to dismiss, and he had an opportunity to file a response, which I believe he did, and he had an opportunity to put in an opposing affidavit, which he didn't, and he had an opportunity to put in any other... Well, actually, he doesn't have the opportunity to put it... He should not have put an affidavit until a court converts this to a Rule 56 proceeding. I'm not too sure that you could have done it either unless you moved this into a Rule 56 proceeding. On a 12b-6, you're supposed to look only at the pleadings. And the pleadings, to me, indicate that he's being punished and he's a pretrial detainee, and you're not allowed to punish him. Does that set forth the course of action? Not when he provides the rational... the reasonable relationship to a legitimate government purpose in the complaint itself, which is what he did. He stated in the complaint, I am charged with first-degree murder, and I am being housed in a maximum security unit. And just as in Block v. Rutherford, where the court said that the valid rational connection between contact visits and prison security is too obvious to warrant extended discussion, we believe that putting a first-degree murder into maximum security custody, that there's a rational connection there that is obvious. But you have other murderers who are not in that chair. Belvey-Wolfish and Block v. Rutherford did not create a third prong to the test, which is the consistency prong, so that if in every instance the prison doesn't follow the policy, that somehow negates the policy. Instead, what the court said is that the prison officials have discretion. And discretion means to do A or not A, to do B or not B, to take a murder and put him into maximum security or put him into medium-high security. And if the warden or another official puts the murderers into medium-high and then thinks better of it, what have I done? I've made a mistake. And they put them back into maximum security. That is still a rational thing to do. And the rational relationship test, which Belvey-Wolfish and Block v. Rutherford created, has been passed. And the fact that the plaintiffs can fly-spec the consistency of decision-making at DCC does not mean that the rational relationship is destroyed like some kind of a fragile A. Is it clearly established for qualifying purposes that a pretrial detainee cannot be punished? Yes. Tell me about this institution. This is a state-run institution that's primarily for people who've been convicted or a lot of pretrial detainees there, like a jail? Your Honor, the state of Delaware is different from many states. Doesn't it have jails? It's a combined system of both detention and prison. So everybody's thrown in together? Well, into the same institution, not necessarily in the same wing. But it's the same building or same institution? It's the same institution. Sure. So we submit that the discovery that they want to take to prove that this wasn't the real reason, they did not allege in their complaint. They did not allege that there was, in fact, a punitive motive on the warden's part. What they said was that the transfer was punitive. And in their supporting documents, they say it's punitive simply because of duration and limited privileges. How come the other murderers are not in SHU? We would have to talk to the warden, Your Honor. And I think that it is a decision for the sound discretion of prison professionals who work in this area. Who knows? There could be a murderer who is an 85-year-old in a wheelchair who picked up a lamp and whacked his wife over the head with it. And maybe that person would not need to be in maximum security. These individuals shot a witness on his way to trial, Stevenson and Manley. And for the warden to say these two should be in maximum security is an eminently reasonable decision. And on the face of it, for any first-degree murderer, it's an eminently reasonable decision. Well, it very well may be reasonable. I don't disagree with you. It well may be reasonable. But doesn't that call upon a factual summary judgment proceeding to ferret out whether or not what the warden is doing is reasonable under the particular facts of the case? In the absence of allegations, specific allegations of some kind of impropriety or wrongdoing or malicious intent or disciplinary intent, I think no. Why is the allegation that he's being punished, he's an SHU and others are not, why is that? And for punitive purposes, why is that sufficient? For 12 v. 6 purposes? For the same reason it wasn't in Ivankov v. Fisher. It is a boilerplate conclusory allegation, and it is not backed up by specific allegations. And if we apply the reasonable relationship test of Bell v. Wolfish and Block v. Rutherford, which was, and the court could not have been more clear, to say that the appropriate inquiry by courts in these situations is a very limited scope of inquiry, and where the rational, reasonable relationship is apparent on the face of the complaint, as it was here. And the court didn't talk about, in every instance we have to find out what the real reason was. How is it clear here, the reason for his being put in SHU, how is it clear? Because it's going over my head. I think in any instance where a first degree murder is put into maximum security, there is clearly an alternative government purpose that is assignable as the reason for the restriction. How is it so clear if others charged with the same offense are not placed in that unit? It's either a reasonable relationship or it's not. They are charged with first degree murder. They're not charged with a white collar crime. If they were charged with a white collar crime and they were put into maximum security, there would be a question. It would be, what have they done, or what is the threat here? One doesn't have to puzzle over what the threat might be from a first degree murder. The connection between first degree murder and maximum security is like toast and jam. The fact that every single first degree murder doesn't end up in maximum security doesn't change that fact. It doesn't change the rational connection between those two. When it is apparent on the face of the complaint, it should be sufficient to dismiss the complaint. If there are allegations here like in Magluta, it would be different. We have nothing like that. We have no statement from an officer that he was being punished. There is simply nothing to that effect. If we apply Alston v. Parker, then I'm wrong. Who knows? Maybe a phone call to the district court clerk's office is sufficient to take a deposition of the warden. If we look at the subsequent decision in Ivanko v. Fisher, this court was still saying that a single boilerplate conclusory assertion is insufficient to sustain a complaint when the rest of the complaint does not state a claim. And that's what we're relying on. I would finally argue that there is no case that I'm aware of where at the outset a murderer being put into maximum security is entitled to notice and hearing. Even if that person is a detainee, we're not aware of such a case. And in the absence of settled law and clear law on this point, we think the defendant is entitled to qualified immunity. And this case is now moot since they are no longer in. They've all been sentenced and one of them is out of the shoe. It's a 1983 case, though. It hasn't moot. Isn't there a damages court? If they're entitled to qualified immunity, we believe it's moot in terms of injunctive relief. Thank you very much. Thank you. Thank you. May it please the court. I just have a few very quick points to make here. With regards to the allegations, even if the punitive and the punishment aspect of the complaint is not sufficient, there's still the procedural due process claim, which nobody disputes is sufficiently plugged in this case. And moreover, in the case Alston v. Parker, this court held that in the instance in which there is not enough allegations to state a claim, that the court cannot dismiss the complaint unless it is futile and clear that no one could allege a valid claim, but they have to allow leave to amend. Here, at the very least, it has to be reversed, remanded, and leave to amend granted. And the last point is, counsel argued that just because it's inconsistent doesn't mean that it destroyed the rational relationship test. And I agree with that. But what he followed that by is to say, you have to talk to the warden. He's the one who knows. And that's precisely the point, is we have to talk to the warden, at least in some general form through written discovery or otherwise, to find out exactly what happened here and how we go forward. This is a Rule 12b-6 motion. It should be reversed and remanded for further proceedings. Unless there are any further questions, I'm done. Thank you very much. Thank you. Thank you, counsel. And we'll take the case under advisement. We'll call the matter of United States of America.